WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter K. Naki, | No. CV-13-02189-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Hawaii, State of, et al., | |
| Defendants. | |

Pending before the Court is Peter K. Naki's ("Plaintiff's") Motion for Reconsideration (Doc. 131) pursuant to Fed. R. Civ. P. 59(e) of the Court's August 5, 2015, Order granting summary judgment in favor of Defendants Hawaii, State of, et al. (Doc. 127). The Court now rules on the motion.

## I.    Background

This matter arises out of injuries suffered by Plaintiff after he allegedly fell from the top bunk of his prison cell in Saguaro Correctional Center ("SCC"). (Doc. 127 at 1). Plaintiff alleges, among other claims, that Defendant[1] was negligent when it forced Plaintiff to use the top bunk in his cell without providing adequate safety measures and proper means to ascend to and descend from his bunk. (Doc. 39 at 7-8).

On August 5, 2015, the Court ruled on Defendant's Motion for Summary

---

[1] Defendants Hawaii, State of, the Hawaii Department of Public Safety, and Doe Defendants 1-100 were dismissed from the case. (Doc. 43). Corrections Corporation of America is the only remaining defendant in the matter.

1   Judgment (Doc. 108) and Motion to Exclude Plaintiff's Human Factors Expert Joellen

2   Gill. (Doc. 107). The Court found—with respect to Plaintiff's proposed expert witness—

3   that under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, *Inc*., 509

4   U.S. 579 (1993), Ms. Gill's proposed testimony was "unsupported by any reasoning,

5   data, facts, principles, techniques, or methods," and would not be admitted. (Doc. 127 at

6   6). Turning to Defendant's motion for summary judgment, the Court found that "under

7   Arizona law, when 'the alleged lack of care occurred during [a] professional or business

8   activity, the plaintiff must present expert witness testimony'" to establish the requisite

9   standard of care, (Doc. 127 at 9 (quoting *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life*

10  *Ins. Co.*, 742 P.2d 808, 816 (Ariz. 1987))), and that "[c]ourts have applied this principle

11  to prison operations." (*Id.* (citations omitted)). Absent Plaintiff's ability to proffer expert

12  testimony, Defendant was entitled to summary judgment on the negligence claim. (*Id.*).

13  The Court also granted Defendant summary judgment on Plaintiff's Title 42 U.S.C. §

14  1983 (2012) claim. (*Id.* at 10).

15      On August 19, 2015, Plaintiff filed a motion that the Court characterized as a Rule

16  59(e) motion to provide relief from a final judgment.[2] (Doc. 131). Although Plaintiff had

17  simultaneously filed a notice of appeal, the Court retained jurisdiction over the matter

18  under Fed. R. App. Proc. 4(a)(4)(B)(i). (Doc. 134 at 2). On September 11, 2015, the

19  Court issued an Order that acknowledged it had "recently held that a claim for negligence

20  against prison officials in the failure to provide medical attention in some circumstances

21  does not require expert testimony as to the standard of care," and ordered Defendant to

22  respond to Plaintiff's motion and address whether the issues surrounding the negligence

23  claim fell within "the common understanding of jurors." (Doc. 134 at 5). Having

24  reviewed the parties' filings, the Court now addresses the motion.

25

26

27      [2] Plaintiff's motion failed to address the Court's rulings that barred Ms. Gill's
testimony and granted Defendant summary judgment on the 42 U.S.C. § 1983 claim. The
28  Court therefore confines its discussion to Plaintiff's contention that the Court committed
clear error when it granted Defendant summary judgment on his negligence claim.

## II.     Legal Standard

"Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (quoting *389 Orange Street Partners*, 179 F.3d 656, 665 (9th Cir. 1999)). "A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* (emphasis in original).

## III.     Analysis

Plaintiff has not brought to the Court's attention newly discovered evidence pertaining to his case, and has not argued that there has been an intervening change in the controlling law. Rather, Plaintiff contends that the Court committed clear error in two respects: (1) the Court "overlooked the common law standard of care," because "[i]t is not necessary to have an expert witness to establish the standard of care in prisons"; (Doc. 131 at 2); and (2) the Court ignored Plaintiff's argument that his negligence claim was also based on Defendant repeatedly instructing Plaintiff to climb on to his bunk using unsecured "lockers" stacked on top of one another. (*Id.* at 4). The Court analyzes each argument in turn.

### A.     The Necessity of Expert Testimony to Establish the Standard of Care

The Court first considers Plaintiff's argument that under Arizona law a proffer of expert testimony is not necessary to establish the standard of care for a correctional facility. As stated in the August 5, 2015 Order: in ordinary negligence actions, "the standard imposed is that of the conduct of a reasonably prudent man under the

1    circumstances." *Bell v. Maricopa Medical Ctr.*, 755 P.2d 1180, 1182 (Ariz. Ct. App.

2    1988) (citing *Paul v. Holcomb*, 442 P.2d 559, 561 (Ariz. 1968)). (Doc. 127 at 9). "In such

3    cases, it is not necessary for the plaintiff to present evidence to establish the standard of

4    care because the jury can rely on its own experience in determining whether the

5    defendant acted with reasonable care under the circumstances." *Id.* (citing *Rossell v.*

6    *Volkswagen of Am.*, 709 P.2d 517, 523-24 (Ariz. 1985)). But under Arizona law, when

7    "the alleged lack of care occurred during [a] professional or business activity, the plaintiff

8    must present expert witness testimony as to the care and competence prevalent in the

9    business or profession." *St. Joseph's Hosp. & Med. Ctr.*, 742 P.2d at 816. A number of

10   courts have applied this standard to correctional facilities.[3]

11         Plaintiff argues that *Ballesteros*, 2013 Ariz. App. Unpub. LEXIS 19, at \*10, stands

12   for the principle that under Arizona law, "in prisons, the standard [of care] is that of a

13   reasonably prudent person and it is not necessary for the plaintiff to present evidence to

14   establish the standard of care . . . .'" (Doc. 131 at 2 (citation omitted)). The Court

15   disagrees. Ignoring the unpublished status of the opinion, the *Ballesteros* court did not

16   articulate such a broad, sweeping holding. Rather, the court—after acknowledging that

17   generally "the issue of inmate safety is not 'within the realm of the everyday experiences

18

19         [3] *See e.g.*, *Gordon v. Kitsap County*, No. 45648-6-II, 2015 Wash. App. LEXIS
20   981, at \*7-\*8 (Wash. Ct. App. May 5, 2015) (internal quotation marks omitted)
     (concluding that "in light of the complex considerations inherent in the management of a
21   correctional facility . . . expert testimony [is] necessary to establish what constitutes
     reasonable care"); *Red. Equip. PTE Ltd. v. BSE Tech, LLC*, No. 2:13-CV-1003-HRH,
22   2014 U.S. Dist. LEXIS 13070, at \*17 (D. Ariz. Sept. 18, 2014) (citing *Porter v. Arizona
     Dep't of Corr.*, No. 2:09-CV-2479-HRH, 2012 U.S. Dist. LEXIS 186799, at \*3–\*5 (D.
23   Ariz. Sept. 17, 2012)); *Villalobos v. Bd. of County Comm'rs*, 322 P.3d 439, 442 (N.M. Ct.
     App. 2014) (holding that expert testimony was required to assist the jury in rendering a
24   decision on the standard of care imposed on prison officials monitoring inmates);
     *Seawright v. State*, No. 2:11-CV-1304-PHX-JAT, 2013 WL 4430928, at \*1 (D. Ariz.
25   Aug. 16, 2013) (noting that the plaintiff conceded "that the law in Arizona requires an
     expert witness to establish the standard of care" for a gross negligence and wrongful
26   death claim brought against prison officials); *Ballesteros v. State*, 1 CA-CV 12-0005,
     2013 Ariz. App. Unpub. LEXIS 19, at \*10 (Ariz. Ct. App. Jan. 8, 2013) (quoting with
27   approval *Hughes v. District of Columbia*, 425 A.2d 1299, 1303 (D.C. 1981), for the
     general proposition that "the issue of inmate safety is not 'within the realm of the
28   everyday experiences of a lay person'"); *Porter*, 2012 U.S. Dist. LEXIS 186799, at \*3–
     \*5 (concluding that the "professional standard of care" applied "because the alleged lack
     of care was by correction officers acting in their professional capacity").

1    of a lay person,'" 2013 Ariz. App. Unpub. LEXIS 19, at *10 (quoting *Hughes*, 425 A.2d

2    at 1303)—concluded that "inmate access to medical care, after an appropriate request, is

3    within a lay person's realm of experience." *Id.* Thus, "under the circumstances of [the]

4    case, the State and its prisons officials [were not] subject to a professional standard of

5    care . . . ." *Id.* The court reasoned that because the plaintiff was "experiencing influenza-

6    like symptoms" and "did not receive medical evaluation or treatment" for over a week

7    despite having "repeatedly requested medical attention," *id.* at *2, "[t]he State's

8    management of prisoner medical care and its failure to respond to Ballesteros's repeated

9    requests for care [were] not factual issues outside the common understanding of jurors."

10   *Id.* at *8-*9. The court's holding comports with ample Arizona precedent recognizing

11   that expert testimony is necessary when "the jury [cannot] rely on its own experience in

12   determining whether the defendant acted with reasonable care under the circumstances,"

13   *Bell*, 755 P.2d at 1182 (citation omitted). Consequently, Plaintiff's argument fails.

14   The Court's inquiry continues, however. As noted *supra*, the September 11, 2015,

15   Order explained that this Court recently held in *Reidhead v. Arizona*, No. 2:12-CV-12-

16   00089-PHX-JAT, 2014 U.S. Dist. LEXIS 85626, at *16-*18 (D. Ariz. June 24, 2014)—

17   that at least in some circumstances—expert witness testimony is not required to establish

18   the standard of care in a negligence claim against prison officials. (Doc. 134 at 5). Having

19   reviewed the parties' filings and requisite case law, the Court concludes that Plaintiff's

20   negligence claim is not within the "common understanding of jurors," *Rossell*, 709 P.2d

21   at 524 (citation omitted), and *Reidhead* does not absolve Plaintiff of the requirement to

22   proffer expert testimony on the standard of care.

23   At issue in *Reidhead* was the failure, by numerous prison officials, to monitor the

24   condition of a female inmate exhibiting commonly recognized symptoms of a life-

25   threatening health issue. Inmate Brenda Todd was in her cell when she first "reported to

26   another inmate that she was having trouble breathing," and then when the on-duty "pill

27   nurse" made her rounds that evening, Todd informed the nurse that she was suffering

28   from the "classic symptoms" of a heart attack. *Reidhead*, 2014 U.S. Dist. LEXIS 85626,

1

2

3

4

5

6

7

8

9

at *2, *11. Specifically, Todd "was experiencing chest pain, left arm pain, numbness, tingling, pain in her neck, and throat constriction." *Id.* at *2. Despite "begging for help," *id.* (internal quotation marks omitted), the nurse told Todd to take an ibuprofen, drink water, lay down, and that there was "nothing" that the nurse could do for her. *Id.* at *2-*3. That evening, no efforts were made by on-site prison officials to monitor Todd or address the symptoms she articulated earlier. *Id.* at *3-*4. Todd's body was discovered the next morning by a corrections officer conducting a security check, and an autopsy revealed that she "had been dead for a number of hours." *Id.* at *4 (internal quotation marks omitted).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The defendants argued that the plaintiff's negligence claims must fail because the plaintiff failed to proffer expert witness testimony on "the standard of care of a pill nurse employed by the Arizona Department of Corrections." *Reidhead*, 2014 U.S. Dist. LEXIS 85626, at *10-*11. This Court rejected the argument, finding that in light of Todd exhibiting "the classic symptoms of a heart attack that are widely known even among those with no formal training," *id.* at *17, and the prison officials' failure to conduct standard "security checks," "investigate . . . banging noises," inform on-duty officials of the "identify of the inmate having breathing problems," and their failure to respond to Todd's numerous "requests for medical attention," *id.* at *16-*17, "[a] reasonable juror could find such negligence occurred not only by the pill nurse's failure to obtain medical aid for Todd, but also by the other prison officers' failure" to adequately carry out their job responsibilities. *Id.* Similarly, *Ballesteros*, *supra*, involved a visibly ill inmate repeatedly having his requests for medical assistance denied over the course of an entire week by prison officials—even as his condition worsened to the point of becoming terminal. 2013 Ariz. App. Unpub. LEXIS 19, at *10. *Reidhead* and *Ballesteros* therefore do not stand for the principle that the standard of care for correctional facilities is simply that of a reasonably prudent person, but rather both cases are examples of the exception under Arizona law recognizing that expert testimony on a profession's or business's standard of care is not necessary when "the negligence is so grossly apparent that a

1    layman would have no difficulty in recognizing it." *Bell*, 755 P.2d at 1183 n.1; *see also*

2    *Nina Dejonghe v. E.F. Hutton & Co.*, *Inc.*, 830 P.2d 862, 867 (Ariz. Ct. App. 1991).

3         In the instant matter, Plaintiff seeks to establish that Defendant was negligent by

4    "failing to provide Plaintiff with proper . . . devices to enable [Plaintiff] to safely descend

5    and/or ascend" from his top bunk, (Doc. 39 at 8), by "refusing to reassign Plaintiff from

6    the top level of the bunk," (Doc. 39 at 9), by "instructing" Plaintiff to climb up to his

7    bunk by using "unstable plastic locker crates," and by "repeatedly ignoring Plaintiff's

8    complaints." (Doc. 39 at 9). First, the Court finds that Defendant's system-wide cell bunk

9    policies involve "factual issues outside the common understanding of jurors." *Rossell*,

10   709 P.2d at 524 (citing *Atchison*, *Topeka*, *& Santa Fe Railway Co. v. Parr*, 391 P.2d 575,

11   578-79 (Ariz. 1964)). Specifically, Plaintiff's claim attacks the policy and process by

12   which Defendant places inmates in particular cell bunks, the administrative process for

13   requesting bunk changes, the authority of correctional officers to make such changes, the

14   rationale behind Defendant's refusal to affix ladders or other fixtures to the top bunks, the

15   frequency and severity of injuries suffered among the prison population from bunk falls,

16   and consideration of inmates' physical characteristics in assigning bunks. Generally,

17   "[p]rison operations are outside the common knowledge of the average juror," *Porter*,

18   2012 U.S. Dist. LEXIS 186799, at *14-*15, and the prison operation being attacked here

19   is a system designed to house a large number of inmates of differing physical

20   characteristics while balancing the interests of a particular inmate's physical safety and

21   well-being with the safety of correctional officers and other inmates in the facility. These

22   factual issues are beyond a lay juror's understanding. *Rossell*, 709 P.2d at 524 (citation

23   omitted).

24        Second, Plaintiff has failed to establish "grossly apparent" negligence on the part

25   of Defendant that would be obvious to a layman. *Bell*, 755 P.2d at 1183 n.1. Plaintiff's

26   claim is premised on three principal factual allegations: (1) Defendant failed to provide

27   Plaintiff with a ladder to access his bunk; (2) Defendant failed to permit Plaintiff to

28   transfer to a lower bunk; and (3) Defendant instructed Plaintiff to access his bunk by

1   climbing up lockers that were stacked on top of one another.[4] (Doc. 39 at 8-9). In

2   contrast, in *Reidhead*, the negligence was grossly apparent where the defendants flatly

3   ignored the "classic symptoms" of widely recognizable trauma. 2014 U.S. Dist. LEXIS

4   85626, at *16-*17. In *Ballesteros*, the defendants' negligence was grossly apparent and

5   evident to a lay juror where prison officials ignored an inmate's deteriorating physical

6   condition to the point where it became terminal. 2013 Ariz. App. Unpub. LEXIS 19, at

7   *10; *see also Tiller v. Von Pohle*, 230 P.2d 213 (Ariz. 1951) (negligence was grossly

8   apparent when a doctor left a medical rag in a patient for two years); *Carranza v. Tucson*

9   *Med. Ctr.*, 662 P.2d 455, 456-57 (Ariz. Ct. App. 1983) (concluding that expert testimony

10  was not required to prevail on the theory of res ipsa for a burn on the patient's leg

11  following heart surgery). Taken together, the Court finds that the facts alleged by

12  Plaintiff do not rise to the level of what courts have treated as "grossly apparent"

13  negligence in the past.

14          Because the Court has found that Plaintiff's negligence claim rests on factual

15  issues beyond the common understanding of the average juror, and Plaintiff is unable to

16  show that Defendant was negligent in a "grossly apparent" manner, the Court concludes

17  that Plaintiff must proffer expert testimony to establish the standard of care in this case.

18  *See St. Joseph's Hosp. & Med. Ctr.*, 742 P.2d at 816.

19

20  **B.      The Court's Consideration of Plaintiff's Factual Allegations**

21          The Court now turns to Plaintiff's remaining argument, that the Court committed

22  clear error when it ignored Plaintiff's argument that his negligence claim was based on

23  Defendant's repeated instructions to Plaintiff directing him to climb on to his bunk by

24  stacking unsecured boxes on top of one another in violation of institution staff

25  instructions. (Doc. 131 at 2, 6). The Court disagrees. The Court considered all of

26  Plaintiff's factual allegations when it ruled on whether Defendant was entitled to

27  judgment as a matter of law. As a general matter, the Court has treated Plaintiff's claims

28

---

[4] The Court's consideration of this factual allegation is addressed fully *infra*.

1    against Defendant as a "professional standard of care case because the alleged lack of

2    care was by correction officers acting in their professional capacity." *Porter*, 2012 U.S.

3    Dist. LEXIS 186799, at *14-*15. Ordinarily, "[p]rison operations are outside the

4    common knowledge of the average juror," as "[c]orrection officers have to manage

5    potentially dangerous individuals living in close proximity to each other," and "[t]he

6    standard of care required in such an environment is a matter beyond the ken of the

7    average juror that requires expert testimony." *Id.* at *15 (citation and internal quotation

8    marks omitted). However, Plaintiff need not present expert testimony if he can

9    demonstrate that "the negligence is so grossly apparent that a layman would have no

10   difficulty in recognizing it," *Bell*, 755 P.2d at 1183 n.1, as the plaintiff did in *Reidhead*,

11   2014 U.S. Dist. LEXIS 85626, at *16-*17.

12          The Court acknowledges that Plaintiff's factual allegation—that Warden Griego

13   directed Plaintiff to use stacked and unsecured "lockers" to climb on to his top bunk—is

14   a closer call. (Doc. 115-2 at 4). A cursory examination of the facts, allegedly showing

15   that an individual in a position of authority directed Plaintiff to stack unsecured items on

16   top of one another in order to hoist himself on to a bunk 4'8" off of the floor, (Doc. 115-1

17   at 8), may appear to be within the "common understanding of jurors." However, the court

18   concludes otherwise for two reasons: (1) the allegation is based wholly on the

19   management of "potentially dangerous individuals living in close proximity to each

20   other" by correctional officers "acting in their professional capacity," *Porter*, 2012 U.S.

21   Dist. LEXIS 186799, at *14-15; and (2) as the Court discussed *supra*, the placement of

22   cell bunks and inmate assignments encompass myriad considerations to be weighed by

23   the correctional facility that are "beyond the ken of the average juror." Further, although

24   Plaintiff's allegation that Warden Griego violated Defendant's "internal policies and

25   procedures" by instructing Plaintiff to use stacked lockers to climb on to his bunk may be

26   evidence of negligence," *id.* at *14,  that factual allegation alone does not constitute

27   "grossly apparent" negligence. *Bell*, 755 P.2d at 1183 n.1. Thus, in the context of a

28   correctional facility, Plaintiff's negligence claim rests on factual issues "beyond the

1    common understanding of jurors," and expert testimony is necessary. *Rossell*, 709 P.2d at

2    524 (citation omitted).

3         Based on the foregoing analysis, Plaintiff has failed to demonstrate that the Court

4    committed clear error when it granted Defendant's motion for summary judgment.

5    Accordingly the Court will deny Plaintiff's motion for reconsideration.

6

7                          **IV.    Conclusion**

8         For the aforementioned reasons,

9         **IT IS ORDERED** that Plaintiff's motion for reconsideration (Doc. 131) is hereby

10   DENIED.

11        Dated this 14th day of October, 2015.

12

13

14   _____

15                          James A. Teilborg
                     Senior United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28